IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DESTINY WILLIAMS AND**                                                        **PLAINTIFF**
**DEBBIE WILLIAMS**

**v.**                                                    **CAUSE NO. 3:12-CV-569-CWR-FKB**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for summary judgment filed by Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Docket No. 78. The Plaintiffs filed a response, to which the Defendant has submitted a rebuttal. Having carefully considered the record of this case, relevant statutory and case law, and being otherwise fully advised in the premises, for the reasons discussed below, the Court concludes that summary judgment should be GRANTED.

**I. Factual and Procedural History**

On March 29, 2012, Plaintiff Destiny Williams was involved in an automobile accident with James McGee who was insured by Allstate. *See* Dep. of Destiny Williams, Exhibit A, Docket No. 81-1, at 34, 55 (hereinafter "Pl.'s Dep."). Although police were called to the scene, a police report of the collision was not prepared because it occurred on private property. The parties agree that the accident was the result of McGee's negligence. At the time of the accident, Williams had uninsured motorist (UIM) coverage under her mother's (Debbie Williams) policy of insurance with Liberty Mutual. Williams' UIM coverage totaled $25,000. *See* Docket No. 1-1.

The day the accident occurred, Plaintiffs reported the incident to Liberty Mutual. Pl.'s Dep. at 45. Plaintiffs filed suit against McGee in April 2012. *See* Docket No. 77-10. Two months later, on June 5, 2012, Plaintiffs' counsel contacted Liberty Mutual informing them that Allstate

was accepting responsibility and that a UIM claim with Liberty Mutual may need to be filed, as Allstate's $25,000 bodily injury limit may have been insufficient coverage.[1] *Liberty Mutual's Claims Log*, Exhibit L, Docket No. 77-12, at 6 (hereinafter "*Claims Log*"). Additionally, Plaintiffs' counsel provided Liberty Mutual with contact information for Williams as well as the contact information for Allstate's adjuster. *Id*. On June 6, 2012, the bodily injury claim was assigned to Liberty Mutual's claims adjuster, Chris Lafoy, who contacted Plaintiffs' counsel to obtain information on the claim. *Id*. at 5. The following day, Liberty Mutual obtained from Williams and her counsel information regarding the accident and Williams' medical treatment. *Id*. at 3. Subsequently, on June 22, 2012, Liberty Mutual's Subrogation Department issued a letter to Plaintiffs, requesting "a copy of the police report or any information on [McGee] or [Allstate]" because the unit intended to "pursue the at fault party." *Id*. at 9.

On July 2, 2013, Lafoy contacted Plaintiffs' counsel requesting a statement from Williams, pictures of Williams' vehicle and information regarding negotiation with McGee and Allstate. *Id*. at 3. Lafoy contacted Plaintiffs' counsel again on July 20 and July 30, 2012, in order to obtain the same information but Plaintiffs' counsel never satisfied Liberty Mutual's requests. *Id*. at 2-3. On July 31, however, Plaintiffs' counsel informed Lafoy that he would honor the adjuster's previous requests. *Id*. at 2. Counsel also informed him that Allstate had offered policy limits of $25,000 for the bodily injury claim. *Id*. at 2. Later that day, Plaintiffs' counsel sent an email to Lafoy informing him that there was no accident report and provided the contact information for Williams and Allstate's counsel so that Lafoy could obtain a copy of Allstate's declaration page. *Id*.; Docket No. 81-7, at 1.

---

[1] As noted below, Plaintiffs did not inform Liberty Mutual that Allstate offered policy limits of $25,000 for Williams' bodily injury claim until July 31, 2012, however. *See* Docket No. 77-10, at 12. But, according to Liberty Mutual's 30(b)(6) representative, Robert Lynn Lovelady, the adjuster could have obtained this information from Allstate as early as June 6, when he received the claim. Lovelady Dep., Docket No. 81-2, Exhibit B, at 73-74.

2

On August 1, 2012, Plaintiffs' counsel sent an email to Lafoy advising him again that he had not pictures. *Id*. The email also demanded UIM policy limits, reminded Liberty Mutual of its duty to deal in good faith with its insured, and threatened to sue if Liberty Mutual did not cooperate. *Id*.; Docket No. 81-7, at 2.[2] On August 6, 2012, Lafoy called Allstate's counsel, who informed Lafoy that Williams' medical expenses were about $17,000 to $18,000, that Allstate had accepted liability at 100% and offered Williams policy limits of $25,000. *Claims Log*, at 1.[3] Thereafter, Plaintiffs' counsel sent another email to Lafoy stating that Plaintiffs had provided all their information and demanded the policy limits once again. Docket No. 81-7, at 4. In addition, the email indicated that Plaintiffs previously requested Liberty Mutual to settle with Allstate for its policy limits and that Liberty Mutual failed to respond.[4] *Id*. (stating that "[Liberty Mutual has] . . . not responded to [Plaintiffs'] request to settle with [Allstate] for its policy limits. . . ."). Counsel also asserted that Liberty Mutual's actions constituted "text book bad faith." *Id*.

That same day, Liberty Mutual issued a letter to Plaintiffs and their counsel reminding them that Liberty Mutual's duty is to provide coverage only when there is full compliance of specific provisions under its policy. *Claims Log*, at 7. The provisions referred to in the letter states:

> A.   We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and any of the witnesses.

---

[2]   It is noted that counsel's email responded to an email that Lafoy sent which reminded Plaintiffs' counsel that under the UIM policy, his clients "have a duty to cooperate in the investigation when seeking coverage." Docket No. 81-7, at 2.

[3]   Williams received medical treatment on the day of the accident and saw additional medical providers and received treatment during the weeks following the accident. She also incurred loss wages.

[4]   Plaintiffs claim that Lafoy was first advised in late July 2012 that they were close to completing a settlement with Allstate for the policy limits of $25,000. In Defendant's rebuttal brief, it concedes that on July 31, 2012, Plaintiffs' counsel called Liberty Mutual and informed them that Allstate offered to settle. *See* Def. Liberty Mutual's Reply Mem. in Support of Mot. for Summ. Judg., or, in the Alt., Part. Summ. Judg., Docket No. 86, at 2.

>> B. A person seeking coverage must:
>
> 1. Cooperate with us in the investigation, settlement, or defense of any claim or suit.

*Id*. The letter warned Plaintiffs that they should cooperate immediately or forfeit coverage on the bodily injury claim. *Id*.

On August 9, 2012, Plaintiffs' counsel fulfilled his promise and filed the present suit against Liberty Mutual for its alleged "breach of the implied covenant of good faith and fair dealing in the handling, investigation and evaluation of Plaintiffs' [uninsured motorist] claim." *See* Pl. Compl., Docket No. 1, at 4.

The day after Plaintiffs filed suit, they entered into a settlement agreement with Allstate—unbeknownst to Liberty Mutual—and, in consideration of the payment of Allstate's bodily injury policy limits of $25,000, Plaintiffs released Allstate from all liability.[5] Docket No. 77-14, Allstate Release. Plaintiffs' Complaint alleges that Williams is entitled to receive payment of UIM benefits under its insurance policy with Liberty Mutual. Pl. Compl., Docket No. 1, at 3. In addition, Plaintiffs seek punitive damages, damages for mental and emotional distress, attorneys fees and lost wages. *Id*.

**II. Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.

---

[5] The record does not show when Liberty Mutual actually became aware that Williams settled with Allstate. On August 16, 2012, Liberty Mutual issued a letter to Williams requesting McGee's address. *See* Docket No. 78, at 10, n. 1. Liberty Mutual asserts that this is evidence that it was attempting to satisfy its obligations and had no knowledge of Plaintiffs' settlement. *See also*, *Claims Log*, at 8.

3d 754, 759 (5th Cir. 2002) (citations and quotation marks omitted).

The Court must "view the evidence and draw reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend and Sons, Inc.*, 639 F. 3d 214, 216 (5th Cir. 2011) (citation omitted). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co.*, 276 F. 3d at 759 (citing *SEC v. Recile*, 10 F. 3d 1093, 1097 (5th Cir. 1993)).

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F. 3d 898, 902 (5th Cir. 2011); *Smith v. Goodyear Tire & Rubber Co.*, 495 F. 3d 224, 228 (5th Cir. 2007). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F. 3d 340, 342 (5th Cir. 1999).

### III. Law/Analysis

As to Plaintiffs' bad faith claim, Defendant asserts that it is entitled to summary judgment because Plaintiffs violated Liberty Mutual's consent to settle provision under the insurance policy, which waived Defendant's duty to pay its underinsured motorist benefits. The policy requires the following from an insured seeking UIM benefits:

> [P]romptly notify [Liberty Mutual] *in writing* of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" *and allow* [*Liberty Mutual*] *30 days* to advance payment to that "insured" in an amount equal to the tentative settlement to preserve [Liberty Mutual's] rights against the insurer, owner or operator of such "uninsured motor vehicle."

*Liberty Mutual Insurance Policy Agreement*, Docket No. 77-13, at 26 (emphasis added).

Defendant asserts that the consent to settle provision is valid in Mississippi and is upheld in order "to protect the subrogation rights of an insurer providing uninsured/underinsured

motorists benefits." *See* Def. Liberty Mutual's Mem. in Support of Mot. for Summ. Judg., or, in the Alt., Part. Summ. Judg., Docket No. 78, at 12 (citing *Smith v. Safeco Ins. Co.*, 704 F. Supp. 111, 113 (S.D. Miss. 1988); *U.S. Fid. & Guar. Co. v. Knight*, 882 So. 2d 85, 92-93 (Miss. 2004)). Defendant contends that Plaintiffs notified it of a potential settlement on July 31, 2012, and, 10 days later, Plaintiffs settled with Allstate without their knowledge or consent. Thus, Defendant argues that Plaintiffs' violation precludes them from recovery. *Id.* (citing *U.S. Fid. & Guar. Co. v. Hillman*, 367 So. 2d 914, 921 (Miss. 1979); *Thompson v. Aetna Ins. Co.*, 245 So. 2d 206, 207 (Miss. 1971)). *See also*, *Walker v. Allstate Ins. Co.*, 193 F.3d 516 (5th Cir. 1999) (explaining that under Mississippi law "one of an insurer's limited protections against non-consensual settlements by an insured is a breach of contract defense to an uninsured motorist claim by the settling insured.") (citations omitted).

In their response in opposition to Defendant's motion for summary judgment, Plaintiffs first argue that Liberty Mutual violated its own policy by not initiating a prompt investigation. Liberty Mutual's Claims Investigation Handbook states that they have a three-part process for their investigations:

> On receiving the first report of a claim, a Claims Service Representative (CSR) begins the investigation by digitally recording the accident report explaining the investigative process to the caller and screening for [bodily injury]. Once the claim has entered the [bodily injury unit], there are formal checkpoint: Immediate Contact Plan (ICP)[6], assignment of an investigative strategy (**red**, **yellow**, or **green**), Initial Claim Analysis Report (ICAR), and Comprehensive Claims Analysis Report (CCAR).

*Liberty Mutual's Bodily Injury Claims Investigation Handbook*, Docket No. 81-3, Exhibit C, at LM-2188 (hereinafter "Investigation Handbook"). Plaintiffs' UIM claim was considered to fall under the "yellow" strategy. Lovelady Dep., Exhibit B, at 51. The handbook states that "[t]he

---

[6]  According to Lovelady, this plan did not apply to Williams because she had an attorney. Lovelady Dep. at 55.

yellow strategy is for less intense investigations that still require significant in-person contact." *Investigation Handbook*, at LM-2189. It also states that once a claim is received, the investigation should be "substantially completed" after 14 days and, "[a]t the 14-day mark, or earlier depending on the circumstances of the claim, the Claim owner analyzes the claim and posts the file with findings and recommendations for further action." *Id*. at LM-2189, 2203. Plaintiffs contend that Liberty Mutual, through its Claim Owner, Chris Lafoy, did not adhere to these guidelines with respect to their claim.

In addition, Plaintiffs raise the theory of equitable estoppel in response to Defendant's claim that Plaintiffs should be barred from bringing this action against it for violating its consent to settle provision. Pl. Mem. of Law in Opp. to Def Liberty Mutual's Mot. for Summ. Judg., Docket No. 81, at 14 (citing *Weible v. Univ. S. Miss. v. Stuckey*, 89 So. 3d 1179, 1183 (Miss. 2010) ("Equitable estoppel 'prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens.'")).

After careful review of the arguments by both parties, the insurance contract at issue, as well as the relevant case law, the Court agrees with the Defendant's arguments. The undisputed record evidence shows that Plaintiffs first notified Liberty Mutual of settlement negotiations with Allstate on July 31, 2012. Plaintiffs executed a settlement agreement and release 10 days later, on August 10, 2012, in violation of its contractual agreement with Liberty Mutual, which required Plaintiffs to give Liberty Mutual 30 days written notice of a tentative settlement in order to allow Liberty Mutual to consider advancing tentative settlement payment to preserve its subrogation rights. Plaintiffs had a duty under their Liberty Mutual policy agreement to allow Defendant up to 30 days before they executed their agreement with Allstate. That duty was indisputably breached. *See Walker*, 193 F.3d at 516.

Plaintiffs attempt to raise the doctrine of equitable estoppel to prevent Defendant from asserting that its policy was breached, but, as Defendant correctly points out, Plaintiffs have not presented any evidence to advance a valid claim for equitable estoppel.[7] *See* Def. Liberty Mutual's Reply Mem. in Support of Mot. for Summ. Judg., or, in the Alt., Part. Summ. Judg., Docket No. 86, at 5. Thus, Plaintiffs are precluded from bringing suit against Liberty Mutual and a grant of summary judgment is proper.

A separate judgment in favor of Liberty Mutual will be entered on this day. All other motions are denied as moot.

**SO ORDERED**, this the 30th day of January, 2014.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[7] Under Mississippi law, equitable estoppel exists where there is a "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *B. C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So.2d 483, 492 (Miss. 2005) (citations omitted). Plaintiffs failed to put forth evidence establishing these elements. Moreover, equitable estoppel prevents a party from "having it both ways." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004) (citation omitted). That is, it prevents a party from asserting that one part of a transaction or contract grants them rights "while simultaneously attempting to avoid other parts of the same transaction that [the party] views as a burden." *Id*. Here, Plaintiffs invoke equitable estoppel because they believe that Liberty Mutual did not follow its internal guidelines and therefore Liberty Mutual should not be able to raise its breach of contract defense. However, the *guidelines* are not part of the contractual policy agreement entered into for consideration by Plaintiffs and Liberty Mutual. The guidelines serve as a rubric by which Liberty Mutual employees follow in order to conduct a prompt investigation. Compliance with these guidelines may be helpful in a bad faith claim analysis to determine Defendant's level of negligence, but it may not be used as the basis of an equitable estoppel claim as it is not part of Plaintiffs' contract with Defendant. Equitable estoppel therefore does not apply.